## Case No. 3,508.

CUSHING et al. v. LAIRD.

[4 Ben. 70; 3 Am. Law T. Rep. U. S. Cts. 50; 4 Am. Law Rev. 615.] [1]

District Court, S. D. New York. Feb. Term, 1870.

ADMIRALTY PRACTICE — FOREIGN ATTACHMENT— NON-RESIDENT—MARSHAL'S RETURN — JURISDICTION—MISTRANSLATION OF CLERKE'S PRAXIS.

1. Where a process was issued, containing a clause of foreign attachment, and containing on its face a notice of what the process demanded, and for what cause, and of the time and place when the garnishees must appear and answer, and the marshal made this return on the process: "Personally served on F. & T.," *held*, that service of the process on the garnishees was service of the notice required to be served on them, and was a sufficient attachment of any credits and effects of the respondent in their hands.

2. That the marshal should have returned, that the respondent was not found, and had no goods and chattels within the district, and that, thereupon, his credits and effects had been attached in the hands of the garnishees.

3. That the return could be amended to conform to the facts.

4. The marshal has the power, under the 28th and 32d sections of the act of September 24, 1789 (1 Stat. 88), to amend, after he goes out of office, his return to any process which was in his hands when he went out of office.

5. An attachment of the property of a respondent who is not an inhabitant of the United States, and is not found in this district, is allowable under the second admiralty rule of the supreme court.

[Approved in Atkins v. Fibre Disintegrating Co., Case No. 602. Cited in same case, 18 Wall. (85 U. S) 306; In'ernational Grain Ceiling Co. v. Dill. Case No. 7,053.]

6. A question of jurisdiction should not be disposed of on motion, but on hearing. In Clerke, Praxis, Adm. by Hall, the 28th and 32d titles are mistranslated. Wilson v. Pierce [Case No. 17,826, and Blair v. Bemis [Id. 1,484], criticized.

[Cited in Lands v. Two Hundred and Twenty-Seven Tons of Coal. 4 Fed. 479; Romaine v. Union Ins. Co., 28 Fed. 636.]

This was a cause of spoliation and damage, civil and maritime. The libellants [John N. Cushing and others] claimed to recover from the respondent [John Laird], as damages,

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 4 Am. Law Rev. 615, contains only a partial report.]

$89,044, for the destruction of their ship, the Sonora, by the Alabama. The libel was refiled twice in an amended form. The original and the two amended libels prayed for a warrant of arrest against the respondent, "and, if he cannot be found, that his goods and chattels, and, if none be found, that his credits and effects in the hands of Foster and Thomson and in the hands of the assistant treasurer of the United States, in the city of New York, (known as the proceeds of the steamer Wren or otherwise) garnishees, may be attached to the amount sued for, and costs." Process in personam was issued on the original libel and also on each of the two amended libels. The process issued on the original libel commanded the marshal to cite the respondent, if found in this district, and, if he could not be found, to attach his goods and chattels to the amount sued for, and, if such property could not be found, to attach his credits and effects to the amount sued-for, in the hands of Foster and Thomson and the assistant treasurer of the United States, his garnishees. The return by the marshal to that process was in these words: "Respondent not found—attached his credits and effects in the hands of H. H. Van Dyck, assistant treasurer of the United States, and Messrs. Foster and Thomson." The process issued on the first amended libel had the same mandatory words as the process issued on the original libel, and the return to it by the marshal was in substantially the same words as the return to the process issued on the original libel. The process issued on the second amended libel had the same mandatory words as the two processes previously issued, and, in addition, a command to the marshal to cite the garnishees, if found in his district, to appear before the court, at the time and place named in the process for the return thereof, to make return concerning the property of the respondent in their possession then or at the time of the issuing of the process, and to answer such interrogatories as might be propounded to them on the part of the libellants. The return by the marshal to th's third process was in these words: "Personally served on Foster and Thomson and Mr. Van Dyck, assistant treasurer." The returns to the first two processes stated that the credits and effects of the respondent were attached in the hands of Foster and Thomson. The return to the third process did not so state specifically, but only stated that the process was personally served on Foster and Thomson. Foster and Thomson now moved the court to discharge "the attachment" against them "as garnishees named in the process of attachment."

C. Cushing and J. L. Ward, for libellants.

T. C. T. Buckley, for garnishees.

BLATCHFORD, District Judge. The attachment of credits and effects in the hands of a garnishee may be made, without actual levy on or arrest thereof, by the service on the garnishee of a notice apprising him of what the process demands, and for what cause, and warning him of the time and place when he must appear before the court and respond concerning the existence of such credits and effects and their status. Ben. Adm. § 430; Conk. Adm. 481. In this case, the third process contains such a notice on the face of it. The service of the process on Foster and Thomson was, therefore, a service of such notice, and such service constituted a sufficient attachment of any credits and effects in their hands belonging to the respondent. The return of personal service on Foster and Thomson, on the third process, implies that the service on them was made in the manner in which it ought to have been made, namely, by the exhibition of the process to them, and the delivery of a copy of it to them. But the marshal had no authority by the process, which follows, in its terms, the prayer of the amended libel on which it was issued, and the provisions of the 2d rule of admiralty practice, prescribed by the supreme court, to attach the goods and chattels of the respondent unless he failed to find the respondent within his district, so as to cite him to appear, nor had he any authority to attach the credits and effects of the respondent in the hands of the garnishees named in the process, unless he failed to so find the respondent and also failed to find sufficient goods and chattels of the respondent to be attached. Conk. Adm. 480. Assuming that the marshal did not, on the third process, find the respondent or find any goods or chattels of his to be attached, the return to such process should have been, that the defendant was not found and had no goods or chattels within the district, and that the marshal had, therefore, attached his credits and effects in the hands of the garnishees named, by taking possession of such credits and effects, or by showing to the garnishees the original process, and delivering a copy thereof to them personally, or by leaving a copy thereof at the residence or usual place of business of the garnishees, with some person of suitable age, they being absent. Id. 483; rule 30 of this court; rule 37 in admiralty, prescribed by the supreme court. So, also, the returns to the first two processes should have been, that the respondent was not found, and had no goods and chattels within the district, and that, therefore, his credits and effects were attached in the hands of the garnishees. It is not shown, in point of fact, by the garnishees, that the respondent was found or that he had any goods and chattels within the district which could have been attached; and, if the facts existed, which, in the case of each process, made the attachment of credits and effects proper, the returns can all of them be amended to conform to the facts, and to show proper cases for the attachment of credits and effects.

An objection is taken to the first two processes, because they do not on their faces

contain a citation to the garnishees. I do not think that is necessary. The attachment of the credits and effects in the hands of the garnishees may be made, as before stated, by actual levy on or arrest thereof, or by notice. The notice need not be in the process. But the return should show how the attachment was made. Inasmuch as, in the first two processes, there is no citation to the garnishees, the returns to those processes should show that the notice before specified was given to the garnishees. It results, that the returns to all of the processes fail to show that the attachments of the credits and effects were lawfully made. The processes are in proper form. The motion on the part of the garnishees is understood to be a motion to discharge all of the attachments made under all of the processes. As the difficulty may be in the returns on the processes, and not in the substantive facts, and as the notice of motion does not state the grounds for the motion, an opportunity will be allowed to amend the returns. If they shall not be amended within a time to be named in the order to be entered hereon, the attachments of credits and effects made under the processes will be discharged.

In accordance with the foregoing decision the returns were amended as follows: To the process returnable September 22d, 1868, the libellants filed, on the 11th of December, 1869, an amended return, in the words and figures following: "Pursuant to an order made and entered in this cause, on Saturday, the 27th day of November, A. D. 1869, I hereby make the following amended return to the within process, viz.: Respondent not found within this district; no goods or chattels belonging to respondent found within this district. I have, therefore, attached the credits and effects of the respondent in the hands of Foster & Thomson, his garnishees, on the 16th day of September, 1868, by exhibiting to J. P. Girard Foster, one of said garnishees, the original process, and leaving with him, at the office of said garnishees, at No. 69 Wall street, in the city of New York, a copy thereof; and I have also attached the credits and effects of the respondent in the hands of H. H. Van Dyck, assistant treasurer of the United States, in the city of New York, by exhibiting to him the original process, and leaving with him a copy thereof, at his office, in the U. S. treasury building, in said city of New York. Dec. 10, 1869. R. Murray, late U. S. Marshal, S. D. N. Y." To the process returnable November 3d, 1886, the libellants filed, on the 11th of December, 1869, an amended return, in all respects like the foregoing amended return to the process returnable September 22d, 1868, except that, instead of the words "the 16th day of September, 1868," the words "the 29th day of September, 1868," were used. To the process returnable June 15th, 1869, the libellants filed, on the 7th of De-

cember, 1869, an amended return, in all respects like the foregoing amended return to the process returnable September 22d, 1868, except that, instead of the words "the 16th day of September, 1868," the words "the 18th day of May, A. D. 1869," were used; and, instead of the words "Dec. 10, 1869," the words "Dec. 7, 1869," are used; and instead of the words "R. Murray, late U. S. Marshal, S. D. N. Y.," the words "Francis C. Barlow, late U. S. Marshal, S. D. N. Y.," were used. The returns having been thus amended, the garnishees renewed their motion to discharge the attachments as against them.

BLATCHFORD, District Judge. It is objected to these amended returns, or new returns, that they appear, on their faces, to have been made by Mr. Murray and Mr. Barlow respectively after they had respectively ceased to hold the office of marshal; that the power of the marshals to make return to the processes expired when they ceased to hold the office of marshal; that the processes appear to have been executed and returned before the amended returns were made; and that the amended returns are invalid, for want of power to make them in the persons who purport to have made them. It was assumed, and not controverted, on the hearing of the motion, that Mr. Murray and Mr. Barlow had respectively returned the processes, by the several original returns, before they ceased respectively to hold the office of marshal.

The 28th section of the act of September 24, 1789 (1 Stat. 88), provides, that "every marshal, or his deputy, when removed from office, or when the term for which the marshal is appointed shall expire, shall have power, notwithstanding, to execute all such precepts as shall be in their hands respectively at the time of such removal or expiration of office." It is contended that this section does not apply to this case, for the reason that these processes were not in the hands of the outgoing marshals, when they respectively went out of office. A process in the hands of a marshal, when he goes out of office, and under which he has prior to that time made a levy or an attachment, but to which he has not prior to that time made any return, is clearly process in his hands, within the section, when he goes out of office. By the section, he has no power given to him in respect to such process, after he goes out of office, except to execute it. Yet, it cannot be doubted, that it is the intention of the section, that he shall, notwithstanding he is out of office, make return to the process under which he has, prior to going out of office, made a levy or an attachment. Therefore, the word "execute" in the section must be held to include the making return to the process executed. If this were not so, the provision would be without any meaning or effect; for, it would be useless for the execution of the process to take place,

unless a return of such execution could lawfully be made by the person executing the process. Now, until a true return, conforming to the facts, is made, there cannot be said to be, in judgment of law, any return. The return is a unit, and until, by amendment, if necessary, it is made to state the facts, it cannot be considered as fully made. Until then, the process must, under the 28th section, be regarded as still in the hands of the outgoing marshal. Having once come to his hands, it is not out of his hands, until he has made to it such a return as ought to be made to it.

Moreover, the amendments made to the processes are within the provisions of the 32d section of the same act, which provides, that no return in a civil cause in any court of the United States shall be abated, arrested, quashed, or reversed, for any defect or want of form, but the court shall proceed and give judgment according as the right of the cause and matter in law shall appear unto it, without regarding any imperfections, defects, or want of form in such return, except those only, in cases of demurrer, which the party demurring shall specially set down and express, together with his demurrer, as the cause thereof, and that the court shall and may, from time to time, amend all and every such imperfections, defects, and wants of form, other than those only which the party demurring shall express as aforesaid, and may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as the court shall, in its discretion, and by its rules, prescribe. The defects in the original returns were such defects as this section was intended to cover.

It is also objected, that the amended returns are not more full and specific returns as to the original executions of the processes, but are returns showing new and independent executions of the processes, made subsequently to the several return days of such processes. The criticism is, that the returns are dated severally two of them on the 7th, and one of them on the 10th day of December, 1869; that in them the late officers, severally, say that they have attached the credits and effects of the respondent in the hands of Foster and Thomson, his garnishees, (in one case), on the 16th day of September, 1868, (in another), on the 29th day of September, 1868, and, (in the third), on the 18th day of May, 1869, by exhibiting, &c.; that the late officers do not severally say, in the amended returns, that they made the attachments on those three several days, or that they severally exhibited the original processes to and left them with Mr. Foster on those three several days; that they only say that they have severally attached such of the credits and effects of the respondent as were in the hands of Foster and Thomson on those three several days; that, inasmuch as the amended returns fail to show, affirma-

tively, that the several attachments were made prior to the several return days of the processes, it cannot be inferred that they were so made; and that, therefore, the amended returns bear, on their faces, affirmations of distinct new executions of the three several processes, subsequent to such several return days. I think, on a fair construction of the several amended returns, they import that the several attachments were made on the three several days specified and, therefore, prior to the several return days. But, as it is not shown by the garnishees that the facts are otherwise, the libellants may, if they desire, in order to prevent all question, have leave to procure amendments of the several returns, stating specifically that the attachments were severally made on the days specified, and that the processes were severally exhibited to and left with Mr. Foster on those days.

This brings up for decision the main questions argued on the motion. The respondent is a subject and resident of the kingdom of Great Britain, and was not in the United States at the time of the commencement of the proceedings in this action, and has not been within the limits of the United States since that time, and has not appeared in said proceedings. All of the pleadings on the part of the libellants describe the respondent as being "of Birkenhead in the kingdom of England, ship builder," and the action as a cause of "spoliation and damage, civil and maritime." The substance of the libel is, that the ship Sonora, owned by the libellants, was, on the 26th of December, 1863, while on the high seas, in the straits of Malacca, piratically burned and entirely destroyed by the master of an armed vessel called the Alabama, then owned by the respondent. It is contended, for the garnishees, that this court has no jurisdiction of this action because it has acquired no jurisdiction of the person of the respondent, and that the inhibition of the 11th section of the act of September 24, 1789 (1 Stat. 78), applies to this case. That section provides, that no civil suit shall be brought before a circuit court of the United States, or a district court of the United States, against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ. It is sufficient to say, that, as it is not shown that the respondent ever has been an inhabitant of the United States, the provision cited from the said 11th section does not apply to this case, even though it should be conceded that this suit is such a civil suit as is intended by the provision.

The processes in this case were such as are authorized by the 2d rule in admiralty, prescribed by the supreme court, in March, 1845. That rule provides as follows: "In suits in personam, the mesne process may be by a simple warrant of arrest of the person of

the defendant, in the nature of a capias, or, ·by a warrant of arrest of the person of the ·defendant, with a clause therein, that, if he cannot be found, to attach his goods and ·chattels to the amount sued for, or, if such property cannot be found, to attach his credits and effects to the amount sued for, in the hands of the garnishees named therein; or, by a simple monition, in the nature of a summons, to appear and answer to the suit, as the libellant shall, in his libel or information, pray for or elect." The provisions of this rule are to the effect, that, in any suit in personam, whenever, for any reason, the defendant cannot be found, his goods and chattels, to the amount sued for, may be attached, and, in default of any such, his credits and effects, to the amount sued for, in the hands of garnishees, may be attached. The rule provides for an attachment of goods and chattels, and of credits and effects, only in cases where the defendant cannot be found. It was promulgated by the supreme court, under what that court regarded as being authority to that effect conferred upon it by the 6th section of the act of August 23, 1842 (5 Stat. 518). The supreme court manifestly regarded it as settled law, that, in a civil cause of admiralty and maritime jurisdiction, in personam, a district court of the United States can acquire jurisdiction of the cause, by serving an attachment on the goods and chattels, or the credits and effects, of the defendant within its jurisdiction, where the defendant cannot be found personally within such jurisdiction. This view as to the admiralty jurisdiction was thus promulgated in March, 1845, notwithstanding the decision in the case of Toland v. Sprague, 12 Pet. [37 U. S.] 300, in 1838, to the effect, that, in a civil suit, not in admiralty, brought originally in a circuit court of the United States, by a plaintiff against a defendant, an attachment of property, to compel the appearance of the defendant, can be made only where the defendant is an inhabitant of, or found within, the United States, and is thus amenable to the process of such court in personam, and not where he is an alien or a citizen resident abroad, at the commencement of the suit, and has no inhabitancy in the United States.

The exercise of jurisdiction in admiralty, through the service of such process as is provided for by the 2d rule, was held by the supreme court to be a rightful exercise thereof, under the constitution and laws of the United States, as early as the year 1825, in the case of Manro v. Almeida, 10 Wheat. [23 U. S.] 473. The court held, that the use of the process of attachment in the admiralty had the highest sanction, as well in principle as convenience; that such process had the clearest sanction in the practice of the civil law; that it was unquestionably legal in the courts of admiralty of the United States, prior to the passage of the process act of May 8, 1792 (1 Stat. 275); that there is noth-

·ing in that act to preclude its use; and that ·it is agreeable to the principles, rules and usages which belong to courts of admiralty, within the language of the 2d section of that act. The court cites in support of this view Clerke, Praxis Adm., by Hall (titles 28 and ·32),—a book which it pronounces to be a work of "respectable authority and remote origin." The entire title 28, in Clerke, is as follows (Baltimore Ed., 1809): "Title 28. Of the warrant to be impetrated in rem, where the debtor absconds or is absent from the realm. All that was written in the preceding titles is to be understood as applicable to cases in which the ·defendant is actually arrested to respond in a civil cause. But if he has concealed himself, or has absconded from the kingdom, so that he cannot be arrested, if he have any goods, merchandise, ship or vessel upon the sea, or within the ebb and flow of the sea, and within the jurisdiction of the lord high admiral, a warrant is to be impetrated to this effect, viz.: 'to attach such goods or such ship of D., the defendant, in whose hands soever they may be, and to cite the said D. specially as the owner, and all others who claim any right or title to them, to be and appear on a certain day, to answer unto P. in a civil and maritime cause.'" This passage is held by the court to be authority for issuing the process of attachment in a case where the defendant· has concealed himself, or absconded from the kingdom, which was the case then before the court, it being stated in the libel that the defendant had absconded from the United States, and fled beyond the jurisdiction of the court. The court also holds, that, by title 32 of Clerke, it is consistent with the practice of the admiralty, in cases where there is no property which the officer can attach by manucaption, to proceed to attach goods or credits in the hands of third persons, by means of the simple service of a notice. The entire title 32 in Clerke (same edition) is as follows: "Title 32. The manner of attaching goods or debts in the hands of others, to which the officer cannot have access. Sometimes the person who, by loan or other maritime contract, is indebted to another, cannot be approached so as to be arrested, nor has he any property, which the officer can attach. Yet, you may be informed of persons, in whose hands there are goods which belong to your debtor, or who may be indebted to him. In such a case you may obtain a warrant similar to that which is mentioned in title 28, 'of other manner of proceeding,' &c. And the officer may go to the person in whose possession the goods are deposited, or who is indebted to your debtor, or which are liable or responsible to your debtor, and attach such goods or credits in his hands. He is to cite that person and all others to appear as before prescribed in title 28. It is to be noted that in this warrant the words. 'the goods, debts, or sums of money belonging to a certain R., and be-

ing in the hands of the aforesaid person,' are to be included. These words are omitted in the case or warrant which was before mentioned."

It was contended, on this motion, by the counsel for the garnishees, that title 28 of Clerke, and the decision in Manro v. Almeida [supra], go no further than to hold that the process of attachment is proper in a civil cause in personam in admiralty, where the defendant has concealed himself, or has absconded, and not in a case like the present, where he is merely absent and cannot be properly said to have concealed himself, or to have absconded. It is to be noted, however, that title 32 speaks of any inability to approach the defendant so as to arrest him; and the translator, Mr. Hall, in a note to title 28, says: "This proceeding is in the nature of the process of foreign attachments under the custom of London, which has been introduced into most, if not all, of the states, with great advantage and success. Its object is to compel the appearance of an absent or absconding debtor, and, in case he does appear, to satisfy the debt out of his effects and credits." So, also, the caption of title 28 announces, that that title relates to the warrant to be impetrated where the debtor absconds or is absent from the realm. Where the caption of the title thus draws a distinction between absconding and absence, in a manner to show that both are to be treated of in the title—absence following upon absconding, and absence without absconding—and it is found that the text of the title does not speak of absence without absconding, but only speaks of concealment or absconding, it would be natural to suppose that some part of either the caption or the text has not been correctly translated. The Baltimore edition of 1809, which is a translation in English, is the one referred to in Manro v. Almeida. Francis Clerke was registrar of the court of arches during the reign of Queen Elizabeth. His work, "Praxis Supremae Curiae Admiralitatis" was first printed in 1679. It was in Latin. A fifth edition, in Latin, was published in 1791. This was a very correct edition, and is the one from which the translation by Mr. Hall, which is the Baltimore edition of 1809, was made. I have recurred to this fifth edition in Latin, and find some manifest errors in the translation by Mr. Hall of title 28. The caption of title 28 is as follows: "Alius modus procedendi in causa civili, si reus aere alieno gravatus se absentaverit, quo minus actio contra eum possit institui; et primo de warranto in hoc casu impetrando." This caption Mr. Hall translates as follows: "Of the warrant to be impetrated in rem, where the debtor absconds or is absent from the realm." The true translation is this: "Another method of proceeding in a civil cause, if the defendant debtor shall have absented himself, so that an action cannot be instituted against him; and first of the warrant to be obtained in this

case." The Latin words in the caption are, "se absentaverit." These are translated by Mr. Hall, "absconds or is absent from the realm." The proper translation is, "shall have absented himself." The words do not properly involve the idea of absconding, in the sense of having been within the jurisdiction and having departed from it furtively, or malo animo. To absent one's self, is no more than to be absent, or to keep one's self absent, or away, or out of the jurisdiction, without any reference to ever having been within the jurisdiction. So, also, in title 28, the Latin sentence is: "Sed si reus ita latitaverit vel abfuerit extra regnum, quo minus possit arrestari; tunc si," &c. This is translated by Mr. Hall thus: "But if he has concealed himself or has absconded from the kingdom, so that he cannot be arrested, if" &c. The true translation is this: "But, if the defendant shall have concealed himself, or shall have been absent out of the realm, so that he cannot be arrested; then, if" &c. The words, "abfuerit extra regnum," Mr. Hall translates, "has absconded from the kingdom." The proper translation is, "shall have been absent out of the realm." "Abesse extra regnum," means merely, to be absent from or out of the realm; that is, not to be present within the realm. That Mr. Hall himself, notwithstanding the apparent meaning of the language of his translation of the text of title 28, understood that the proceeding provided for in that title applied to absence as well as to absconding, is shown by his statement, before cited, in his note to that title, that the object of the proceeding is, to compel the appearance of an absent or absconding debtor. He must, therefore, have understood the word "abfuerit" as including absence in any way, as well as absence by absconding. In title 32, the Latin words are: "non potest conveniri, ut eum possis arrestare." These words Mr. Hall translates, "cannot be approached, so as to be arrested." It would be more literally accurate to say, "cannot be reached, (or found), so that you may arrest him." In either case, the language of title 32 is such as to show that the proceeding provided for is to be used whenever the defendant cannot be reached or found, whether he is absent by absconding, or absent without absconding.

No sound difference in principle can be maintained between the propriety of resorting to the species of attachment referred to, in a case where the defendant is absent from the jurisdiction by absconding, and in other cases of absence. There is equally, in all cases, the want of proper personal service of process on the defendant, and the absence of the defendant from the jurisdiction, and the presence of attachable property within the jurisdiction.

The practice of issuing a foreign attachment against the property of a respondent in the hands of third persons, in order to compel the appearance of the respondent in a

suit in personam, and to apply such property to the satisfaction of the decree in the suit, has been, it is understood, the practice recognized and used as appropriate in civil suits in admiralty, in the admiralty courts in the southern district of New York and in Massachusetts—two of the principal admiralty tribunals of original jurisdiction in the United States—for a series of years. In Reed v. Hussey [Case No. 11,646], decided in 1836, the practice is referred to as settled on the authority of Clerke, and of the case of Manro v. Almeida. It is also recognized in Shorey v. Runnell [Case No. 12,807], decided in 1858. The whole subject was reviewed by Judge Benedict, in 1867, in the district court for the eastern district of New York, in the case of Atkins v. Fibre Disintegrating Co. [Id. 600], and the lawfulness and propriety of the practice, especially under the provisions of the 2d rule in admiralty prescribed by the supreme court, was upheld in an exhaustive and conclusive opinion.

The power to issue the process of foreign attachment in a civil suit in the admiralty against a citizen of the United States, and an inhabitant of the United States, not an inhabitant of the district where the process was issued, and not found therein at the time of serving the process, but a citizen of a state other than the state embracing such district, and domiciled in the state of which he was so a citizen, was denied by the district court for the district of California, in 1852, in the case of Wilson v. Pierce [Id. 17,826], on the ground that the suit was a suit against an inhabitant of the United States, commenced by original process, and, as such, within the prohibition of the 11th section of the act of 1789. Strictly, that case does not cover the present one, as the respondent here is not an inhabitant of the United States. The court, in that case, holds, that the process of foreign attachment is in accordance with the principles, rules and usages of courts of admiralty; that the decision in Manro v. Almeida was limited, however, to the point, that the process of foreign attachment could issue against the credits and effects of an absconding debtor who had fled beyond the jurisdiction; that the case of a similar process against an inhabitant of the United States, and a resident of another district, was not before the supreme court in that case, and is within the prohibition of the said 11th section; and that the 2d rule in admiralty, if it conflicts with the 11th section, must yield to it.

In the case of Blair v. Bemis [Case No. 1,484], in 1863, in the district court for Connecticut, in a civil suit in admiralty against inhabitants of the district of Massachusetts, none of whom were found in the district of Connecticut at the time of serving the writ, the same views were held as in Wilson v. Pierce [supra].

These two cases are opposed to the general current of authority, and to the understanding and practice of the profession. Mr. Justice Story, who was a member of the court when Manro v. Almeida was decided, says, in Clarke v. New Jersey Steam Nav. Co. [Case No. 2,859], decided in 1841, that, ever since the case of Manro v. Almeida, it has not been doubted, that the process of attachment well lies, in an admiralty suit, against the property of private persons, whose property is found within the district, although their persons may not be found therein, as well to enforce their appearance to the suit, as to apply it in satisfaction of the decree rendered in the suit, and that the very point decided in that case was, that the jurisdiction of courts of admiralty might be executed not only against persons found within the district, but also by attachment against their property found within the district, although the persons are not there. Professor Parsons, in his work on Maritime Law (volume 2, bk. 4, Ed. 1859, p. 685, c. 3, § 2), says that, in Manro v. Almeida, the question was considered as to the power of the court to grant an attachment of goods when the defendant was out of the jurisdiction, and the power was asserted by the court. He refers to the decision in Wilson v. Pierce [supra], and says that he does not consider it to be correct, and has no doubt that a person who resides out of a certain district may be sued in admiralty in that district, if he has property there which can be there attached; that a suit in admiralty is not a civil suit, within the meaning of that term in the 11th section of the act of 1789; and that, until the decision in Wilson v. Pierce, it was never doubted that the rule established in Manro v. Almeida, in respect to a person who had absconded, applied to every case where the defendant was out of the jurisdiction. These views are reiterated by Professor Parsons, in his work on Shipping and Admiralty (volume 2, bk. 3, Ed. 1869, p. 390, c. 3, § 2), and the case of Atkins v. Fibre Disintegrating Co. [supra] is cited by him as sustaining those views.

I have no doubt of the jurisdiction of this court in this case, acquired in the manner referred to. If I regarded it as doubtful, I should not be willing, in view of the weight of authority in favor of it, to set aside the attachments on motion. So grave a question as that of jurisdiction ought not to be disposed of on a motion, but ought to be presented by pleading or at the trial, and in a formal manner. Dennistoun v. Draper [Case No. 3,804]; Cartwright v. The Othello [Id. 2,-483]. When it is so presented, the benefit of a review in regard to it can certainly be secured, while the right of the libellants to such review might be doubtful if the attachments were to be discharged on motion.

The motion is denied.

[NOTE. The case was heard and decided on the merits at the April term, 1873. See Case No. 3,509.]