CARTWRIGHT (GOODWIN v.).    See Case No. 5,551.

CARTWRIGHT (LORAINE v.).    See Case No. 8,500.

---

## Case No. 2,483.

### CARTWRIGHT et al. v. The OTHELLO.

[1 Ben. 43.] [1]

District Court, E. D. New York. March, 1866.[2]

ARREST OF GOVERNMENT PROPERTY — BOTTOMRY BOND—VESSEL CHARTERED TO THE GOVERNMENT —MOTION TO VACATE PROCESS.

1. Where a vessel under charter to the United States, whose owners were to victual and man her, took on board a load of property captured by the army of the United States to bring it to New York, and meeting with disaster on the voyage, her master took up money on a bottomry of the vessel and cargo, and on her arrival in New York a libel was filed to enforce the bottomry bond, and the vessel and cargo were seized by the marshal under the process, and no appearance being entered for either vessel or cargo, the district attorney of the United States, before the return of the process, applied on affidavit for an order directing the release of the property and vacating the process, on the ground that government property was not subject to the process of the court, —Held, that whether the vessel could be considered as government property under the charter was doubtful, and that such a question should not be disposed of before appearance, and on motion.

[Cited in Lands v. Cargo of 227 Tons of Coal, 4 Fed. 479.]

2. That though the cargo was government property, it had been put by the government into the custody of the master of the vessel, and it was doubtful whether granting the order would put the government into possession of it.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed as to the cargo, and reversed as to the vessel, in Case No. 10,611.]

3. That the law of the case ought to be determined upon a hearing on issues properly and formally framed, instead of upon motion.

[Cited in Cushing v. Laird, Case No. 3,508; Lands v. Cargo of 227 Tons of Coal, 4 Fed. 479; Romaine v. Union Ins. Co., 28 Fed. 636.]

[In admiralty. Libel by David G. Cartwright and Frederick H. Harrison against the schooner Othello and cargo.]

This was a motion to vacate the process issued in the cause. It appeared from the papers read upon the motion that the schooner Othello was chartered by her owners to the government of the United States, at the rate of fifty dollars per day, for an indefinite period of time, the owners to victual, man, and navigate the vessel, and transport therein such property as might be tendered by the quartermaster of the United States army. According to the terms of the charter party, the vessel was to be kept fit for service by her owners, and all sea risks to be borne by them. Under this charter, and while under the command and in the possession of the master not an officer in the service of the United States, but appointed and paid by the owners, she set sail from Wilmington for New York, laden with a cargo of property which had been captured by the army of the United States. In the prosecution of her voyage, she met with disaster at sea, and was compelled to put into St. Thomas for repairs. While there, the master, in order to raise money necessary to repair and enable him to prosecute his voyage, executed a bottomry bond in the usual form upon both vessel and cargo, to secure the sum of $15,-535, alleged to have been borrowed by him for the purposes aforesaid. The vessel thereafter proceeded upon her voyage, and arrived in this port, when the bond not being discharged, a libel was filed in this court to enforce it, and the vessel and cargo taken into custody by the marshal under the admiralty process issued according to the prayer of the libel. Before any appearance or claim for either vessel or cargo had been entered, the district attorney, on behalf of the United States, before the return day of the process, moved, upon affidavits, for an order directing the discharge of the property from custody, and vacating the process, on the ground that the cargo was conceded to be the property of the United States, and that by virtue of the peculiar provisions of the charter party referred to, the vessel also was, in law, government property, and as such not subject to the process of the court.

B. D. Silliman, Dist. Atty., for the United States. J. J. Ridgway, for libellants.

BENEDICT, District Judge. According to my present impression, the view taken by the district attorney in regard to the vessel can hardly be maintained. But however that may be, I am clearly of the opinion that such a question as is raised by the facts above narrated should not be finally disposed of before appearance and upon a motion. It does not yet appear that the owners of the vessel, who are the parties responsible for that portion of the advances chargeable to the ship, will not come forward on the return of the process and claim their property, while the interest of the government in the controversy, so far as regards the vessel herself, is certainly very slight, for it appears that the hire of the vessel had been suspended by the quartermaster before the seizure of the vessel, because of a refusal of the master to deliver the cargo.

As to the cargo, the facts are somewhat different, for that is conceded to be the property of the United States. It is property, however, in no way connected with any active operations of either army or navy. It was committed to the custody of the master of this vessel, to be transported by him to this port. While in the prosecution of the voyage, the master, by reason of disaster at sea, has been compelled, in a foreign port, to pledge the cargo to these libellants, by way of bottomry; and upon the termination of the voyage, before any delivery of the property to any officer of the government, and while it still remained in the custody of the master, it was seized by the marshal, by virtue of process issued out of the court of admiralty, in an action brought to enforce payment of the bottomry loan; now, inasmuch as it appears that previous to the seizure by the marshal, the government had failed to obtain possession of the property from the master of the vessel, the order applied for here would not necessarily have the effect to put the government in possession. If such would be the effect of an order releasing the property from the custody of the marshal, because of the great hardship of thus, by an interlocutory order, made on motion, without the interposition of claim or answer, depriving the libellants of any opportunity to derive any advantage from their bottomry bond, and possibly of any opportunity to secure the opinion of an appellate court, I should feel very unwilling to grant the application, unless I felt satisfied that the law of the case was free from all doubt. What the law of the case is, should, I think, be determined in this case, as has been done in other cases where property of the United States has been seized by the marshal, in private suits. (The Thomas A. Scott [Case No. 13,920], Shipman, J.,) upon a hearing upon issues properly and formally framed. The application must, therefore, be denied, both as to vessel and cargo.

[NOTE. The libellants appealed to the circuit court, which affirmed the decree entered herein as to the cargo, and dismissed the libel as to the same, but without costs in either court, but reversed the decree as to the vessel, and directed that the case as to the vessel be heard on the merits. See Case No. 10,611.]