## Case No. 600.

### ATKINS et al. v. FIBRE DISINTEGRATING CO.

[1 Ben. 118.] [1]

District Court, E. D. New York. March, 1867. [2]

ATTACHMENT—FOREIGN CORPORATION —AN ADMIRALTY PROCEEDING NOT A "CIVIL SUIT" WITHIN SECTION 11 OF THE JUDICIARY ACT.

1. Where a libel was filed against a corporation foreign to the district, and under process issued upon that libel property of the corporation was attached, and a motion was made to set aside the attachment, as contrary to the provision of the eleventh section of the judiciary act of 1789, *Held*. That the words "civil suit" in that section do not embrace admiralty proceedings.

[Cited in Casey v. Leary, Case No. 2,497; Cushing v. Laird, Id. 3,508; Manchester v. Hotchkiss, Id. 9,004.]

[See note at end of case.]

2. That if they did, the act of August 23, 1842, and the supreme court rules of 1845 must be held to have repealed that section as far as relates to admiralty proceedings.

3. That the power to attach the property of absent defendants to compel an appearance has always been recognized as within "the course of the admiralty," and the intention to withdraw it or to limit its power will not be inferred from the use of an indefinite phrase.

[Cited in Casey v. Leary, Case No. 2,497.]

[See note at end of case.]

4. That the objection to the proceedings based upon the words of the eleventh section of the act of 1789, is not tenable.

[In admiralty. Libel by Joshua Atkins and others against the Fibre Distintegrating Company of New Jersey.] This case came up on a motion to set aside an attachment against the property of the respondents, a foreign corporation. [Motion denied. This cause was heard on the merits. Atkins v. Fibre Disintegrating Co., Case No. 601.]

Beebe, Dean & Donohue, for the motion.

Benedict, Tracy & Benedict, opposed.

BENEDICT, District Judge. This motion is brought up in order to obtain of this court its construction of the eleventh section of the judiciary act of 1789, [1 Stat. 78,] as affecting proceedings in admiralty.

The action is against a foreign corporation created by the laws of New Jersey, and the process was served by attaching the property of the corporation found in this district. This attachment the defendants now move to set aside upon the ground that the provision of the eleventh section of the judiciary act, which declares "that no civil suit shall be brought before either of said courts against an inhabitant of the United States by any original process, in any other district than that whereof he is an inhabitant or in which he shall be found at the time of serv-

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

ing the writ," governs proceedings in admiralty.

The question is not new. It has been up in various districts, and has been decided both ways. In the southern district of New York, although I find no reported case deciding the precise point, the construction adopted and adhered to for many years has been to consider proceedings in admiralty as not affected by the provision in question. A construction as firmly fixed as this is in the practice of the southern district I should feel bound to follow in this district, even if doubt were entertained as to whether that construction would be laid down if the question were new; for the interests of suitors, as well as the convenience of the judges and the bar, require that if possible the practice of the two courts having concurrent jurisdiction over the waters of this harbor should coincide upon a point like this.

But it seems to me that the question ought to be considered settled by authority. Numerous cases in which the question has existed and where it is not reasonable to suppose that the point was overlooked, have arisen in the southern district, which have been carried by appeal to the circuit court of this circuit, and there the rightfulness of the jurisdiction has been always assumed by both court and counsel. Beyond this, the case of New Jersey Steam Nav. Co. v. Merchants' Bank, decided by the supreme court, (6 How. [47 U. S.] 344,) presented the question, but no such point was made or alluded to, either in the opinion of the court or in the three dissenting opinions, although the discussion was upon the subject of the jurisdiction. "A tacit recognition like this is equivalent to an express determination." [Cliquot's Champagne,] 3 Wall. [70 U. S.] 144.

That the question has been thus passed over, indicates that it has not been considered to be an open one, since the decision of Judge Story in Clark v. New Jersey Steam Nav. Co., [Case No. 2,859,] and of the supreme court in Manro v. Almeida, 10 Wheat. [23 U. S.] 473. These cases with the opposing decision by Judge Hoffman in the California district,—Wilson v. Pierce, [Case No. 17,826,]—have moreover been lately considered and weighed by the distinguished author of Parsons' Maritime Law, who thus announces his conclusion: "We do not consider this decision (Wilson v. Pierce, Hoffman, J.,) to be correct, and have no doubt but that a person who resides out of a certain district may be sued in admiralty in the district, if he has property there which can be attached." 2 Pars. Mar. Law, p. 686. To my mind, the decisions referred to, confirmed by long practice, and supported by an opinion like the one above cited, constitute a weight of authority abundantly sufficient to place the question at rest.

I cannot hope to add anything to the force of the authorities I have referred to, but in

view of the late contrary decision in the district of Connecticut which has occasioned this motion. (Blair v. Bemis, [Case No. 1,484,] Shipman, J.,) I shall venture some considerations which seem to sustain the construction of the phrase "civil suit" in the eleventh section of the judiciary act as referring to ordinary proceedings in courts of law and equity, and not intended to include causes of admiralty and maritime jurisdiction.

I notice first, then, that in the process act of 1789, which was passed but five days after the judiciary act, and was doubtless under consideration when the judiciary act was passed, admiralty proceedings were not only specially provided for, but they are designated by their appropriate name. It is a reasonable supposition that the same congress passing the two acts almost simultaneously would have used the same particular and proper designation in the eleventh section of the judiciary act, if it had intended there to refer to admiralty proceedings.

Again, the eleventh section of the judiciary act gave rise to difficulties which it was found necessary to remedy, and the first section of the act of February 28th, 1839, [1 Stat. 321,] was passed for that purpose. Law, Pr. p. 84. But this latter section is only made applicable to "suits in law or in equity," although the same difficulties would arise in admiralty proceedings if such proceedings were within the provision of the eleventh section. The studied omission of admiralty proceedings from the effect of the remedial section of the act of 1839, shows, therefore, that those proceedings were not then considered as having been affected by the provision of the eleventh section sought to be remedied.

Indeed, in any properly drawn statute admiralty proceedings, when referred to, will be in some way specially designated, and they are so designated in very many if not most of the statutes heretofore considered as covering them. For instance, the act of August 21, 1862, (12 Stat. 588.) They are proceedings so diverse in form and in spirit from ordinary civil suits, and are applicable to classes of property, of persons, and of obligations, so peculiar in their character and their necessities, and are so seldom in the mind of the law makers in passing general statutes, that it seems to be proper to hold as a general rule of construction that, unless alluded to by name or otherwise necessarily within the provisions of any particular statute, such proceedings will be deemed excluded.

Certainly great confusion will arise if in the numerous statutes now being enacted, affecting new classes of industry and of persons, and providing new forms of remedy, admiralty proceedings are to be considered as referred to whenever the words "suit," "civil suit," or "civil action" are used.

Take as an illustration the act of May 4, 1858, (11 Stat. 272,) which requires residence in the district to give jurisdiction in suits in this and many other states, and its effect upon the well known admiralty proceeding in rem against the ship and in personam against the master under the same libel and process, a proceeding often necessary to a proper administration of the maritime law. If the word "suit" in the act of May 4, 1858, covers causes of admiralty and maritime jurisdiction, this proceeding is substantially destroyed, for it is seldom indeed that the ship is to be found in the district where the master resides.

Take also the more important admiralty proceeding to obtain possession of a ship, which is a proceeding in personam. 22 Adm. Rule; The S. C. Ives, [Case No. 7,958.] What, under the construction contended for, is to be done when the residence of the defendant is in one district and the ship to be seized and delivered is in another? Is it possible that embarrassments like these and those others which are indicated by the act of February, 1839, as having arisen in ordinary civil suits, have existed in admiralty proceedings from 1789 to this day, without attracting attention and calling for remedy? There is still another aspect to this question. By the act of 1842, authority was given to the supreme court to provide, regulate, and alter proceedings in admiralty, under which authority the general admiralty rules were promulgated by the supreme court in 1845. Now these rules, which are held to be effective as statutes, seem to ignore the provision of the judiciary act in question, and authorize service of admiralty process by the attachment of property in all cases where the defendant cannot be found. Even if then the terms of the limitation of the eleventh section of the judiciary act were to be held to cover admiralty proceedings, the act of 1842 and the rules of 1845 taken together would be effective as a repeal of the provision so far as applicable to admiralty proceedings. Such an effect was given to these rules by Judge Betts in regard to the important act of January 14, 1841, [1 Stat. 410,] abolishing imprisonment for debt "on process issuing out of courts of the United States." Gaines v. Travis, [Id. 5,180.] And the decision was confirmed by the action of the supreme court in amending the rule.

Moreover, these rules are intended to be and are but the embodiment, for the sake of uniformity in the various districts, of most ancient and important modes of proceeding—adapted to meet the peculiar necessities of ships and of commerce on the sea—substantially the same in all maritime countries and known as "the course of the admiralty." They are one of the special characteristics of causes of admiralty and maritime jurisdiction, causes which do not differ from ordinary civil suits so much in the law to be declared as in the way in

which it is administered. These methods and modes of proceeding are the life of the admiralty. They constitute an essential part of the jurisdiction which the grant of the constitution secures to the national courts, and when the district courts were constituted courts of admiralty they acquired the right to those methods and modes, among which has from the first been the power to seize property of defendants who cannot be found, and to compel an appearance. This power is recognized by the admiralty rules as existing in these courts; it has never been conferred upon any other tribunal, and any intention to place it in abeyance, or to limit its exercise, when entertained by the law-making power, will, it may well be supposed, be clearly expressed and not left to be inferred from the use of a general and indefinite phrase.

It may be added, in conclusion, that no inconvenience or injustice is known to have been caused by the exercise of this power by the district courts, and it is believed that a withdrawal of it now would be deemed a misfortune to the classes of interests to be affected thereby.

If either from changes in the habits of commerce, or from modifications which are found necessary and become fixed in the practice of admiralty courts of other countries, or from changes in the spirit of our institutions, a limitation of the mode of exercising this power shall become necessary or proper, it is not to be doubted that the supreme court as the high appellate court of admiralty, and as empowered by the act of 1842, will effect a change in this particular as it most properly did in regard to the power of imprisonment.

The objection to the proceedings based upon the eleventh section of the judiciary act of 1789, is therefore held to be untenable, and the motion to set aside the attachment on that ground is denied.

[NOTE. This case was reversed by the circuit court, as to the points decided in above opinion, in Atkins v. Fibre Disintegrating Co., Case No. 602: but, upon appeal to the supreme court, the circuit court decree was reversed in 18 Wall. (85 U. S.) 272, and this opinion affirmed. See note to Case No. 602.]