## ROMAINE and others v. UNION INS. Co. and others.

*(Circuit Court, W. D. Tennessee.  August 9, 1886.)*

1. WRIT AND PROCESS—SUBPŒNA SERVED OUTSIDE THE DISTRICT—JURISDICTION.
   Service of a subpœna outside the judicial district is unauthorized and ineffective as compulsory process; but since the party may voluntarily appear, and the court thereby acquire the right to proceed with the case, it is not a question of jurisdiction, unless it happen that the plaintiff and defendant are citizens of the same state, or are otherwise wholly disqualified to sue each other in the federal courts, in which event it does, in those courts, become a matter pertaining to their jurisdiction, to which objection may be taken in any appropriate and convenient way; the mode being quite immaterial.

2. SAME—MOTION TO VACATE THE SERVICE—SPECIAL APPEARANCE—WAIVER.
   But in those cases where the court may proceed upon a voluntary appearance, such a service is a mere matter of irregularity, and the proper practice to avoid a waiver thereof is to obtain an order of the court for leave to enter a special appearance with the clerk, upon an undertaking to submit to the further orders of the court, if the objection should not be sustained; and,

v.28F.no.12—40

after such a conditional appearance, to move the court to discharge the service for the irregularity complained of, whatever it may be. The authorities examined, and practice explained.

In Equity.

Two insurance companies of Pennsylvania and one of Ohio were made defendants to this bill, along with citizens of Tennessee, inhabitants within this judicial district. The subpœna issued against all in the regular form, and was served by the marshal on the resident defendants; and, at the request of plaintiffs' solicitor, he returns that he sent copies of the subpœna and bill to Pennsylvania and Ohio, where the marshals of those districts served them, as they return and certify, upon the non-resident defendants, respectively. Thereupon the two companies belonging to Pennsylvania filed the following paper with the clerk:

"The Union Insurance Company and the Insurance Company of the State of Pennsylvania appear by their counsel, Messrs. Heiskell and Heiskell, for the sole purpose of moving the court to quash the return as to said companies, on the ground that it appears on the face of the bill and proceedings that said companies have no residence in the jurisdiction of this court, and no agent within said jurisdiction; and on the ground that the return of the officer in Pennsylvania, adopted by the marshal here, is not effective to bring said companies before this court; and said motion is made accordingly. The appearance is entered for no other purpose than as aforesaid, in order that steps may not be taken against said companies, which are not in any manner before the court, or subject to its jurisdiction.
                          "HEISKELL & HEISKELL, Attorneys."

This motion was made to vacate the service and return as irregular and unauthorized by law. The plaintiffs opposed the motion, on the ground that it is a question of jurisdiction, to be presented only by plea, and that this voluntary appearance cures the irregularity, and submits the defendants to the jurisdiction of the court.

*Heiskell & Heiskell*, for the motion.

*T. W. Brown*, (*R. G. Brown* with him,) *contra*.

HAMMOND, J. If the defendants had mistaken their remedy to be rid of this service, in view of the fact that it is apparent that they wish to appear specially, and only to take exception to it, and decline to submit voluntarily to be made defendants here, I should have no difficulty in permitting them to amend the proceeding so as to accomplish their purpose by whatever method it might be properly done; for no court, in these days at least, ever holds a party to have abandoned or waived a privilege by any act which is done to assert it, if there be power to permit amendment of the proceeding, of which power there can be no doubt under our statute. Rev. St. § 954.

But, as this motion presents the important and recently much-mooted question as to the proper mode, in our federal equity practice, of taking objection to the service of process, without such a waiver of this privilege as was enforced in *Jones* v. *Andrews*, 10 Wall. 327,

I have thought it best to look into it, particularly as I find that the practice of the federal courts has not been at all uniform, for reasons that will be apparent on reading the cases, and remembering what is said about the peculiarities of the federal courts, in this matter of taking objections to their jurisdiction, in *Rhode Island* v. *Massachusetts*, 12 Pet. 657, 718, which I shall not take space to quote. The jurisdiction of these courts, more than others, is restricted over persons, and to a greater extent formerly than now. *Ober* v. *Gallagher*, 93 U. S. 199, 204. Hence an objection which, in the state practice or that of England, to which our equity rule 90 directs us, would be always a mere matter of irregularity, to be corrected on motion, may become, in the federal courts, a formidable consideration of jurisdiction, to which exception may be taken by plea, demurrer, motion to dismiss, or by even mere suggestion, and by the court *mero motu*, whichever the party pleases to adopt; for there can be no waiver of it under any circumstances. But this distinction is often overlooked, which, coupled with the general tendency of all courts to disregard mere forms, and get at the thing to be done in any convenient way, has very much confused the practice. However, we can have no trouble in any case if we distinguish between a substantive objection to the jurisdiction, technically considered, and one for simple irregularity in the service of the process; because, as was said in *Drummond* v. *Drummond*, 2 Ch. App. Cas. 35, "much confusion has arisen by treating want of power to enforce jurisdiction as tantamount to want of jurisdiction."

Yet I must say, after a quite careful examination of the English practice, as it existed when our equity rules were adopted and since, that, in my judgment, it was and is competent, even where the denial of power over the person of the defendant goes to the extent of a denial of the jurisdiction of the court itself, to move to discharge the service and vacate the process,—thereby accomplishing every purpose that would be accomplished by a demurrer or plea to the jurisdiction; and that technically that is the proper way to take the objection in a court of equity wherever the complaint is a want of power over the person, and not over the subject-matter of the suit, which technical feature results from the peculiar nature of pleas in equity as contradistinguished from their uses in pleadings at law; the latter going to the writ, while in equity there is no such thing as a plea to the writ, but only to the bill, or in bar of the relief sought by it. 2 Daniell, Ch. Pr. (1st Ed.) 136. In *Foley* v. *Maillardet*, 1 De Gex, J. & S. 389, there was such a motion, supported by affidavit, to show that the service was not within the authority of the act of parliament; precisely as if, under the eighth section of our act of congress of March 3, 1875,—chapter 137, 18 St. 472; Rev. St. (2d Ed.) § 738,—a defendant should wish to show that he did not come within the act, and move to vacate the notice or process served upon him. So I do not see why he may not, when served in any case,

outside of that section, specially appear to make known his unwillingness to voluntarily submit to the court, as, under some circumstances, he might wish to do, and move to vacate the service; and this, whether his voluntary appearance and willingness to be bound by the court in that case would have given the court jurisdiction to proceed against him or not, that being wholly immaterial to the determination of the motion.

Take this case for illustration. If it appeared by the bill that the plaintiffs and these defendants were all citizens of the same state, the latter might demur for want of jurisdiction, or plead, (if necessary to show the fact *aliunde* the bill,) or the court would, however the fact should obtrude itself into the record, on its own motion, dismiss the bill; and, if the defendants appeared never so formally and generally, the result would be the same,—the court could not possibly have jurisdiction. But, also, the result would be the same if they should especially appear, and move to discharge the service as irregular, and should join, as they might in such a case, a motion to dismiss the bill; since there is no possible danger in bringing the objection to the attention of the court in any form. But if the fact be that the parties are of diverse citizenship, or the case be one arising under the constitution and laws of the United States, there could be then no question whatever of jurisdiction; for, under our modern acts of congress, the court may acquire jurisdiction by voluntary appearance, and hence a demurrer or plea for want of jurisdiction would be out of place; for *non constat* but that the defendants may appear thereafter, and at any time, if not on that service, on some other day, voluntarily and without any service at all. Hence it could not be proper to dismiss the bill *for want of jurisdiction,* but only to decline to proceed against their consent, by vacating the service, which is all the court should properly do. Except, therefore, in that class of cases, peculiar perhaps to the federal courts, where, in certain situations of residence or citizenship, the power to proceed against the particular persons is wholly denied under all circumstances whatever, the objection that the defendants to a bill in equity have not been effectively served with process to bring them within the presence of the court for judgment, is not, as at law, one of jurisdiction to be pleaded by formal plea to the writ, but one of mere irregularity of process, properly cognizable on motion, according to a practice always prevailing, for that especial purpose; and, when the case falls within the exception just mentioned, it is immaterial, perhaps, save as a matter of convenience and permanency of record, how the objection be taken; because, however taken, it must prevail, as it is one that cannot be waived under any circumstances whatever. It is always safe, therefore, to appear specially and move to discharge the process in any case; for, as will be presently seen, if the court has acquired power, by the disputed process, over the person of the objector, to proceed against him, it is a preliminary condition on

which he is allowed to make such appearance that, if the objection be decided against him, he shall submit to defend the bill as if duly served with process, and he will not be allowed to depart from the court without a more general appearance after having been permitted to appear specially to make his objection; and, if the service be effective, he must abide by it on that decision, and not challenge it again. But if the court can have no jurisdiction,—that is to say, no power to acquire, by the legal service of process of any kind or anywhere, the authority over his person to proceed against him,—he is not precluded from making *that* defense by any demurrer, motion, plea, or whatever method may be available to him after the one just mentioned has been decided against him, and he may at once proceed to make it.

But, again, if the jurisdictional facts be undeniable,—as when the plaintiff and defendant are of diverse citizenship, or when the case is one arising under the constitution and laws of the United States, — it is all-important that the personal privilege (for it is nothing more than that) of being exempt from suit elsewhere than in the judicial district where the party resides, or is lawfully served with process, shall be so asserted as not to bring the party within the category of one who has voluntarily appeared to defend the suit; thereby waiving all irregularities of process, but never any strictly *jurisdictional* objection to the bill, either as to its subject-matter, or its defect in the matter of parties improperly joined, or omitted to be joined, etc.

In the case of corporations like these defendants, of course other complications arise, not now presented for decision, but as to which, in view of the suggestions of the argument, it is not improper to say that they are resolvable by the same principle precisely. Corporations are entitled to the same exemption as natural persons from suits elsewhere than in the judicial district where they are domiciled or commorant, or where they may be found doing business under circumstances subjecting them to the service of process in that place; and they may voluntarily appear, like other people, and waive this exemption or personal privilege.

Making all allowances, then, for the peculiar phases of the subject arising out of the anomalous restrictions upon the federal courts in the matter of their inability to proceed against persons occupying towards the plaintiff certain relations of citizenship, it will be found, I apprehend, that we deal with the objection just as other equity courts do in their normal action upon the subject.

Before going into the authorities to scrutinize the practice, I may usefully summarize the result of my investigations, by saying that in the many English cases examined I have found only one that is in any sense a departure from a familiar and quite uniform rule of practice, by which the defendant appeared in court, and took its leave, by an order for that purpose, to enter a special appearance; but this

was never granted, for substantial reasons, except upon an undertaking or stipulation, contained in the order, that the defendant would submit without further process to the orders of the court if the point should be decided against him. Indeed, for this reason, it was known rather as a *conditional* than a *special* appearance before the registrar. With the exception of the failure to procure that leave of court in this case, and to enter into that undertaking, the practice adopted by defendants' solicitors is the correct one, considering the different structural organization of our courts. The only effect of that failure, if this motion should be denied because of it, would be to commence over again; for, as I suggested at the outset of this opinion, the proceeding, like all others, is subject to amendment, which is scarcely necessary in this case, as the illegality of the service is too plain for any dispute. But hereafter the order should be applied for, and the undertaking given, in all cases; because while, under our practice, it may not be as important as it formerly was under the English practice to hold the defendant in court for subjection to further essential processes before any progress can be made, and we may take a bill *pro confesso* on the service of subpœna alone, without appearance or further process to compel it, yet there may be circumstances, under equity rule 18, when the plaintiff would need the defendant in court as effectually as if he had in fact appeared generally under rule 17; wherefore this fundamental requirement of an undertaking to submit to the further orders of the court should not be abandoned. This undertaking, however, I need scarcely say, would not affect the right of the party to make any objection which he might have to the *jurisdiction*, any more than the effective service of process within the judicial district would affect that right; both these standing upon the same footing in that regard. And it is just here, in my judgment, that all the confusion of ideas arises; for, while this undertaking, formally made, under the English practice, had a larger purpose than under ours it can have, yet the ultimate result is the same; it being in both only the expression of a willingness to appear and defend the case, as if process had been regularly served; and it could never go any further than that under either practice. Neither can the court go any further in the absence of the undertaking, if, under our practice, it be deemed unnecessary to require it.

I have considered, also, that the court may be in vacation, and, before its leave could be had, a *pro confesso* might go under equity rules 18 and 19; but this is not important, because, when the court does meet, it can set aside the *pro confesso*, and indeed all proceedings based on the irregular process and its service, if it be in fact irregular, and may at that time admit the defendant, upon a conditional appearance for that purpose, just as effectually as if the application were made at the return of the process.

In explanation of the English authorities about to be cited it should be said that, unlike it is with us, nothing could be predicated upon

the subpœna alone and its service except subsequent processes to bring the defendant into court, and his immunity from anything like a *pro confesso*, or decree without appearance, was complete; wherefore he need pay no attention to the subpœna or its irregularities until attachment issued to bring him into court, and it was to discharge the attachment, or some subsequent process, that the defendant moved the court when he obtained leave to enter his conditional appearance. With possibly one or two doubtful exceptions, I find no case where there was any direct attack upon the subpœna itself before the attachment issued, and for the reason just stated. It was no *process*, but only a notification upon which to base subsequent process, and it was always treated as such. *Harrison* v. *Rowan*, Pet. C. C. 489. If irregular, the subsequent process of arrest was ineffectual, and would be discharged; but within itself the irregularity was quite immaterial until something else was done. Even being in contempt did not preclude a motion to discharge for irregularity. 1 Daniell, Ch. Pr. (1st Ed.) 657, 681.

Necessarily, however, under our equity rules 7--19, inclusive, in our practice the objection for irregularity must be taken more directly to the subpœna itself; just as, for want of a registrar, a conditional or special appearance must necessarily be entered before the clerk under the implied authority of equity rule 17. Again, it may be stated that our equity rules, unlike almost every other system of practice now in vogue, keep up the necessity for a formal appearance preliminary to the right to take any step at all, although as a fact it is rarely ever done; the parties being content with that appearance which comes of taking some step by way of defense, whatever it be, as is done everywhere else, and particularly in the state courts. 1 Daniell, Ch. Pr. (5th Ed.) 536, note; *Sweeney* v. *Coffin*, 1 Dill. 73. And this habit of disregarding the requirement of formal appearance has also done much to derange the practice.

When our rules were adopted, there were two methods and two places for making appearance, to be selected according to circumstances. A general appearance in the six clerks' office, and, after that was abolished, in the writ and record clerk's office, was a rather unceremonious affair, being a mere exchange of *memoranda* between the court clerks of the plaintiff and defendant, respectively. The failure to enter it had no such effect as we give it under our rules; it being merely the basis for subsequent compulsory process, and always *voluntary*. But, when this appearance had to be compelled, it was entered with the registrar, and more formally and ceremoniously. It was with that officer, under the leave of the court, and by special directions, that the conditional appearance with which we are dealing was entered as a preliminary foundation for the right to come before the court and move to discharge the compulsory process by which the defendant had been arrested, for irregularity in the service of the subpœna, for the disobedience of which the compulsory

process had been issued. If irregular, the disobedience of it was not wrongful, and the attachment was void. Mr. Daniell says:

"It should be observed that, if there be any irregularity in the service of the subpœna, the defendant, if he means to avail himself of the objection, should not appear, as by doing so he will waive the irregularity. He should move to discharge the attachment when it issues." 1 Daniell, Ch. Pr. (1st Eng. Ed.) 565.

Again:

"It seems, however, to be necessary, before he moves to discharge the attachment, that he should enter his appearance with the registrar, which can only be done on his entering into an undertaking that the sergeant-at-arms shall be sent against him in case he shall be found in contempt." Id. note u.

The same practice is somewhat more elaborately stated in that first edition,—which is cited for reasons stated in the note to *Thomson* v. *Wooster*, 114 U. S. 112, S. C. 5 Sup. Ct. Rep. 788, and *Anonymous*; 21 Fed. Rep. 766,—in the chapter on "Contempts," and subsequently in the section relating to appearance with the registrar, where it is shown that there must be a preliminary order of the court, which point, however, is brought out more fully in the later editions, and by reference to the cases. It is also noted in other places relating to the mode of vacating the service of injunctions, etc. 1 Daniell, Ch. Pr. (1st Eng. Ed.) 666; Id. 619, 620; 2 Daniell, Ch. Pr. (1st Eng. Ed.) 13, 14, 15; 3 Daniell, Ch. Pr. (1st Eng. Ed.) 374; 1 Daniell, Ch. Pr. (5th Amer. Ed.) 453, note 6, 511, 512; 1 Newl. Ch. Pr. 66, § 1249.

It is useful to observe that by the general orders of August, 1841, passed after Mr. Daniell wrote, but which are binding on us, (see Mr. Justice BRADLEY's note, 114 U. S. 112, and 5 Sup. Ct. Rep. 788,) the substance of the condition attached to the leave given by the court to enter a special appearance was changed to conform to the extensive alterations of the practice made by those orders. They abolished the necessity of any sergeant-at-arms process to compel appearance, and therefore the condition became "a consent of the defendant to submit to any process which the court might direct to be issued against him for want of appearance, in case the subpœna should not be set aside for irregularity." 1 Daniell, Ch. Pr. (5th Amer. Ed.) 512; *Price* v. *Webb*, 2 Hare, 511, which is a most instructive case on this subject, decided A. D. 1843. With us we do not seek to compel appearance at all, but only enforce the penalty of non-appearance by proceeding, in the further progress of the case, *ex parte* and upon a *pro confesso*. But, as before remarked, since the plaintiff may yet need the defendant in court to compel an answer under our equity rule 18, and may not wish to proceed *ex parte* on *pro confesso*, it seems to me still essential to require that conditional undertaking as established under the orders of 1841.

I had intended to cite somewhat extensively the far more instructive cases, but must be content with a less satisfactory reference to

them. With the exception of *Cookney* v. *Anderson*, 31 Beav. 452, S. C. 1 De Gex, J. & S. 365, where the objection that a service abroad was irregular was held to be properly taken by *demurrer*,—the court treating it as a question of jurisdiction, very much as our federal courts mostly do, for reasons already explained,—there is no aberration in the English authorities from the practice I have indicated; and especially is this so with reference to this very objection of irregularity because of service upon persons abroad, to which many of these cases relate; for it is of very frequent occurrence in the English practice, where such service is permitted much more extensively than with us. The very next case in that book, *Foley* v. *Maillardet, supra,* was one in which the regular practice was observed, and it may be noted that these cases were finally overruled on the merits by *Drummond* v. *Drummond*, 2 Ch. App. 35, but not on the point of practice, as to which no notice was taken on the appeal, Perhaps, if I may presume to say so, it would have been overruled in that respect also, if the effect of the judgment on appeal had not been to reconvert the question into one of mere irregularity, and not one of jurisdiction; which with us may nevertheless continue, for reasons I have sought to explain, to be an important line of demarkation in the process of classifying the cases. It may be a distinction of no importance now in English practice; while here, because of the peculiarity of our federal jurisprudence, a case may sometimes fall within what Lord WESTBURY thought to be a category relating to the jurisdiction, and not a mere irregularity. But the resulting effect of it all is that with us, if the distinction be important, where it is in fact a question of jurisdiction, as I have defined it heretofore in this opinion, the objection may be taken in any way that suggests itself as convenient, and no harm is done, for the case must go out of court at all events, whether the practice be technically correct or not; but if it be a mere irregularity, as it always is if the court could, under any exigency of the case, acquire jurisdiction over the person of the defendant, orderly practice requires a conditional appearance and motion, and it is dangerous to resort to any other, as it might involve a technical general appearance. *Travers* v. *Bulkeley*, 1 Ves. Sr. 383; *Burton* v. *Maloon*, 1 Barnard. Ch. 401; *Mackreth* v. *Nicholson*, 19 Ves. 367; *Attorney General* v. *Earl of Stamford*, 2 Dick. 744; *Thomas* v. *Earl of Jersey*, 2 Mylne & K. 398; *Anon.,* 3 Atk. 567, (where it was said that even after answer filed the defendant may be permitted to take advantage of irregularity in the subpœna under the peculiar circumstances; that it was necessary to file it in order to save an arrest on attachment during vacation;) *Bound* v. *Wells,* 3 Mad. 434; *Frowd* v. *Lawrence,* 1 Jac. & W. 655; *Levi* v. *Ward*, 1 Sim. & S. 334; *Robinson* v. *Nash*, 1 Anstr. 76; *Bourke* v. *Macdonald*, 2 Dick. 587; *Drummond* v. *Drummond, supra;* S. C. 2 Eq. Cas. 335; *Earl of Chesterfield* v. *Bond*, 2 Beav. 263, (where the motion was denied because the defendant had appeared generally, and "not condi-

tionally, with the registrar, to enable him to argue the point;") *Kinder* v. *Forbes*, 2 Beav. 503, (which is more nearly a direct attack on the subpœna than any case examined;) *Davidson* v. *Hastings*, 2 Keen, 509, (where an objection that the defendant could not be heard without "a conditional appearance with the registrar, to be void if the application should succeed, and good if it should fail," was allowed, and time given to enter such an appearance;) *Phospho-Guano Co.* v. *Guild*, L. R. 17 Eq. Cas. 432, (where an "order was made on the *ex parte* application of the defendant giving him leave to enter a conditional appearance, a conditional appearance was entered, and a notice of motion to discharge the order before entered allowing service abroad" was granted, and the motion heard;) *Price* v. *Webb, supra*, (a most instructive case, wherein a defendant was allowed to correct a mistake in entering an appearance, and to take the objection for irregularity;) *Maclean* v. *Dawson*, 27 Beav. 25, (where the court felt compelled to adopt the practice under a kind of protest that the objection ought to be made by way of defense, just as counsel argue here, and as Lord WESTBURY ruled it should in *Cookney* v. *Anderson, supra;* S. C. 4 De Gex & J. 154, on appeal, where the court said: "I think that, ·if a defendant is advised that the discretion which the court has with respect to service upon him abroad has been unwisely exercised in ordering such service, his proper course is to do what these defendants have done,—enter a conditional appearance with the registrar, and move to discharge the order for service;") *Inness* v. *Mitchell*, 4 Drew. 141; S. C. 1 De Gex & J. 423; *Meiklan* v. *Campbell*, 24 Beav. 100; *Whitmore* v. *Ryan*, 4 Hare, 612; *Lewis* v. *Baldwin*, 11 Beav. 153; *Johnson* v. *Barnes*, 1 De Gex & S. 129; *Menzies* v. *Rodrigues*, 1 Price, 92, (where it was ruled on exception that the motion could be made directly without appearance; and, if appearance should be made by mistake, it might be stricken out; it was an equity case in the exchequer.)

Our federal cases are far less satisfactory, and show that but little attention has been paid to technical practice in a matter as to which there should be, perhaps, no requirement of technicalities; but yet as to which they do exist in our own practice, and have been recently much relied on, as here, to lay hold of defendants, *nolens volens*, and force them to submit to be sued outside of their bailiwick; and this must be my apology for so much laborious attention to a matter of this kind. In examining the federal cases, it must not be forgotten that, while the practice in courts of equity and admiralty is somewhat analogous, the restrictions of the eleventh section of the judiciary act of 1789 are held not to apply in admiralty, where non-residents may be sued by original attachment, and where I assume (for I do not stop to inquire into that) they may be effectively served abroad, if not by statutory authority or under the rules, then according to the inherent powers of the court,—very much as such power has long been claimed by the English court of chancery, and as that

court has been aided in doing by acts of parliament and general orders regulating its exercise. Again, the practice in courts of law is to plead in abatement to the writ any ineffectual, irregular, or defective service thereof, and in those courts any want of power over the person of the defendant is one of jurisdiction of the court, because those courts, speaking broadly, proceed against the defendant's property, while a court of chancery proceeds only against his conscience by personal coercion; the one by writ mesne and final, and the other by notice only and decree; but likewise, in a law court, there should be a special appearance to make that plea. And, even then, if the objection be not to the *writ*, but only to irregularity in the use of the *process*, the technical practice is a motion to quash. And yet, again, we must remember that while the eleventh section of the judiciary act of 1789 applies equally to both our courts of law and equity, whereby the objection we are considering may become one of jurisdiction in either, the mode of taking the objection is not the same because of these congenital distinctions in practice.

And still another matter should be observed in this connection. The code practice of the different states has assimilated the practice in courts of law rather to the equity models than to those pertaining in courts of common law; and we find, therefore, in a great many cases both at law and in equity, that this objection to the service of process is taken, as is done in the code practice, by a motion to quash; the matter of distinction between writ and process and between general and special appearances being wholly disregarded, or, what is the same thing, whichever kind of appearance be necessary is implied, but rarely ever formally made, because all formal appearances have fallen into desuetude. If, while among the cases, we keep in view these distinctions, and observe that the eleventh section of the judiciary act of 1789 has been much changed by subsequent acts enlarging our jurisdiction, so that now we go almost to the limit of the constitution itself, we will find but little difficulty in understanding the cases, and the reasons why they have followed no particular practice. I have examined a great many cases to see precisely how the objection we have in hand, or any other of like kind, has been made, and I think I may safely say that there is no way conceivable in which it has not been made, and not a case that undertakes to inform us how it should properly be done. I had thought to go through them *seriatim* in the citations here, but that treatment has so extended this opinion that I have been compelled, less instructively, to condense it by classifying the cases somewhat, and leaving the investigator to apply them according to the suggestions I have made; remembering that not many of them treat of the subject of practice at all, and are cited only as examples of what has been done under similar circumstances.

In the following cases the objection for irregularity was taken by motion to set aside the return, quash the subpœna, or dismiss the

bill,—somewhat as is done in the English practice I have sought to explain, only no showing is made by the reports as to the mode of making a special appearance. It is sometimes stated by the report that there was a special appearance, but oftener there is no showing of that fact, and the truth is, I presume, but little attention was paid to that matter. *U. S.* v. *Union Pac. R. Co.,* 98 U. S. 569, 579, (where it is said an appearance was made "*de bene esse;*") *Kentucky Silver Min. Co.* v. *Day,* 2 Sawy. 468; *Jobbins* v. *Montague,* 5 Ben. 422; S. C. 6 N. B. R. 509; *Hyslop* v. *Hoppock,* 5 Ben. 447; *Pacific R. R.* v. *Missouri Pac. Ry. Co.,* 1 McCrary, 647; S. C. 3 Fed. Rep. 772; *Eaton* v. *St. Louis, etc., Co.,* 7 Fed. Rep. 139; *Plimpton* v. *Winslow,* 9 Fed. Rep. 365; *Provost* v. *Pidgeon,* Id. 409; *Forsyth* v. *Pierson,* Id. 801; *Massachusetts, etc., Co.* v. *Chicago, etc., Co.,* 13 Fed. Rep. 857; *Castello* v. *Castello,* 14 Fed. Rep. 207; *Bowen* v. *Christian,* 16 Fed. Rep. 729.

In the following cases the objection was taken in other modes, all of which I shall not, as I intended, critically review in this opinion. They can be explained, or the practice accounted for, by attention to the distinctions to which I have adverted; the general fact being that technical practice has been quite generally discarded, and nothing has been uniformly substituted. *Bell Telephone Co.* v. *Pan Electric Telephone Co., ante,* 625, where an alleged agent of defendant, being served within the district, but who was in his own right also sued, appeared generally for himself alone, filed *an affidavit* denying the agency, or that the defendant company had any office, etc., and the counsel who appeared for this alleged agent moved to set aside the service, and it was done. No question was made on the point of practice, but it will be observed there was no appearance, general or special, of the defendant at all, and a stranger made the motion. *Atkins* v. *Disintegrating Co.,* 1 Ben. 118, S. C. 7 Blatchf. 555, and 18 Wall. 272, was an admiralty case, where the objection was taken *by answer,* and held to have been by that fact waived, and yet the point was saved by the stipulation in the case. *Paine* v. *Caldwell,* 6 N. B. R. 558; *Tuckerman* v. *Bigelow,* 21 Law Rep. 208; *U. S.* v. *Ottman,* 1 Hughes, 313; *Harrison* v. *Rowan,* Pet. C. C. 489, (where it was done by a plea which was held not to be a waiver, but afterwards the objection was held to have been waived by the formal appearance that had been made *aliunde* the plea;) S. C. 4 Wash. 202; *Winans* v. *McKean R. & N. Co.,* 6 Blatchf. 215; *Van Antwerp* v. *Hulburd,* 7 Blatchf. 426, (where the objection was taken by plea in abatement to the jurisdiction, substituted at the suggestion of the court for a motion to set aside the service, which, under the English practice, was wrong, and fatal under *Jones* v. *Andrews, supra;*) *Cushing* v. *Laird,* 4 Ben. 70, and *The Othello,* 1 Ben. 43, (both in admiralty, where it is said so grave a question should not be raised by motion, but by plea at the hearing; but the objections stated would be obviated by putting the parties specially appearing to make the motion under the stipulation required by the English practice;) *Pond*

**v.** *Vermont V. R. Co.,* 12 Blatchf. 280; *Ober* v. *Gallagher,* 93 U. S. 199, (where the objection seems to have been taken by *demurrer,* though it was not an irregular service, so much as a suggestion that the act of congress should be construed as limiting the jurisdiction to a defendant *residing* in the state, for the defendant was in fact "found" within the district;) *Hale* v. *Continental Life Ins. Co.,* 12 Fed. Rep. 359. *McCoy* v. *Cincinnati, etc., R. Co.,* 13 Fed. Rep. 3, was a plea to the jurisdiction, but Judge BAXTER intimated the distinction between a question of jurisdiction and one of mere irregularity of the service by saying that the objection as argued was "broader" than the plea, "which did not deny service of the process, or raise any question of its regularity or legal sufficiency." In *Steam Stone, etc., Co.* v. *Jones,* 13 Fed. Rep. 567, 572, objection to a writ of sequestration was made by answer, but it pertained not at all to the appearance of the party, but only to the efficacy of the writ to secure the decree, like an objection to ancillary attachment. *Beach* v. *Mosgrove,* 16 Fed. Rep. 305, was a bill of review to set aside a decree *pro confesso,* based on irregular service; and so it was in *Hartley* v. *Boynton,* 17 Fed. Rep. 873. But here it may be remarked that while it is entirely competent, of course, by appeal or bill of review, or such like proceeding, to undo all that has been done upon irregular service, if no appearance has been made either formally or impliedly by some step that binds the party to an appearance, and consequent waiver of the objection, it is equally competent, at that stage of the case, also to make a special appearance, and move to vacate all the proceedings and the service; for it is wholly immaterial, under the English practice, at what point in the proceedings the motion is made, and that is at every stage the customary way of accomplishing that result. This was done in an admiralty case, in *Hardy* v. *Moore,* 4 Fed. Rep. 843. In *Sharon* v. *Hill,* 26 Fed. Rep. 722, there was a plea denying the averment of adverse citizenship, and it was clearly a question of jurisdiction, and the case is a perfect illustration of the distinction on that subject to which I have called attention. So *Christmas* v. *Russell,* 14 Wall. 69, is another illustration of it.

I had noted a considerable number of cases on the law side of the federal courts for citation, but shall discard them with the remark that many of them show that this objection, under the influence of loose practice, is made, even in those courts, by motion to quash the service, and not by plea in abatement, sometimes on a showing of special appearance, but generally that is not shown, and can only be implied from the nature of the proceeding. In the code practice cases that is almost the uniform way. Both in law and equity cases this matter of a formal and preliminary *appearance* is everywhere disused, notwithstanding the rigid and technical enforcement of the rule that a general appearance operates as a waiver of the objection we are considering, and that it must be taken by a special appearance for that purpose. But the fact is that appearances are rarely form-

ally entered *as such*, notwithstanding our equity rule 17; the solicitor simply entering his name on the docket, and appearing by whatever step he may take in pleading. This, of course, is a general appearance, and waives every mere irregularity, but never any *jurisdictional* question; the cases showing that the federal courts, and especially the supreme court, are the most exacting of all in regard to these two rules. If a special appearance is desired, it seems to be accomplished by some mere statement of counsel that he so appears, or it is left to mere implication from the step he takes; and wherever the fact appears that he so limits his appearance, no matter how, no courts are more liberal than the federal courts—and all are so—in giving effect to that intention, without regard to any technical requirement of the practice in that behalf. *Harkness* v. *Hyde,* 98 U. S. 476. I shall merely cite the cases I have classified under the general head of "Appearance" to establish these views; but it is shown by all the cases more by an exhibition of their disregard of technical forms than by any decisions or discussions on the subject. The general result is that the party must manifest an intention to appear specially, or he will be rigidly held to have appeared generally; particularly by taking any step that can be taken only by such an appearance; but the courts have not been exacting to require the manifestation of the intention to appear specially in any particular way whatever. In *Jones* v. *Andrews, supra,* the point whether a motion to dismiss because the bill did not show a proper relation of citizenship of the parties in such a way as to exhibit the jurisdictional fact, would be voluntary or general appearance, was reserved; for, being coupled with another motion which certainly had that effect, it did not need to be decided. But in *Herndon* v. *Ridgway,* 17 How. 424, there was both a motion to dismiss and a demurrer on the ground that the service of process was ineffectual, and the bill was dismissed. There was no showing of a special appearance in a technical or any way, but doubtless it was treated as such. The other cases will not be more particularly noticed than by citation. *Butterworth* v. *Hill,* 114 U. S. 128; S. C. 5 Sup. Ct. Rep. 796; *Harkness* v. *Hyde,* 98 U. S. 476; *O'Hara* v. *Mac-Connell,* 93 U. S. 150; *Maxwell* v. *Stewart,* 22 Wall. 77; *Creighton* v. *Kerr,* 20 Wall. 8; *Atkins* v. *Disintegrating Co.,* 18 Wall. 272; S. C. 7 Blatchf. 555, and 1 Ben. 118; *Eldred* v. *Bank,* 17 Wall. 545; *Shelton* v. *Tiffin,* 6 How. 163; *Farrar* v. *U. S.,* 3 Pet. 459; *Gracie* v. *Palmer,* 8 Wheat. 699; *Patterson* v. *U. S.,* 2 Wheat. 221; *Pollard* v. *Dwight,* 4 Cranch, 421; *Knox* v. *Summers,* 3 Cranch, 496; *Furnace Co.* v. *Moline, etc., Works,* 18 Fed. Rep. 863; *Small* v. *Montgomery,* 17 Fed. Rep. 865; *Graham* v. *Spencer,* 14 Fed. Rep. 603; *Sweeney* v. *Coffin,* 1 Dill. 73; *Dorr* v. *Gibboney,* 3 Hughes, 382; *Silver Min. Co.* v. *Day,* 2 Sawy. 468; *Virginia, etc., Co.* v. *U. S.,* Taney, 418; *Mc-Coy* v. *Lemons,* Hemp. 216; *Harrison* v. *Rowan,* Pet. C. C. 489.

That this objection is not one of *jurisdiction,* but only a personal privilege which may be waived, is conclusively established by the fol-

lowing and all the cases cited in this opinion; but to understand them the fact must be borne in mind that in the federal courts there is always a further question which may be involved in the consideration, or confused with it, and which it is always important to separate, namely, whether the case be one of federal cognizance at all or not, by reason of diversity of citizenship, or the subject-matter of the suit; and *that* is a question of jurisdiction. *Ex parte Schollenberger*, 96 U. S. 369; *Ober* v. *Gallagher*, 93 U. S. 199; *Christmas* v. *Russell*, 14 Wall. 69; *Jones* v. *Andrews*, 10 Wall. 327; *Rhode Island* v. *Massachusetts*, 12 Pet. 657; *Toland* v. *Sprague*, Id. 300; *Gracie* v. *Palmer*, 8 Wheat. 699; *Russell* v. *Clark*, 7 Cranch, 69, 99; *Pond* v. *Vermont V. R. Co.*, 12 Blatchf. 280; *Goodyear* v. *Chaffee*, 3 Blatchf. 268; *Segee* v. *Thomas*, Id. 11; *Picquet* v. *Swan*, 5 Mason, 35; *Flanders* v. *Ætna Ins. Co.*, 3 Mason, 158; *Kitchen* v. *Strawbridge*, 4 Wash. C. C. 85; *Harrison* v. *Rowan*, Pet. C. C. 489.

The leading case of *Toland* v. *Sprague*, 12 Pet. 300, approving *Picquet* v. *Swan*, 5 Mason, 35, establishes that with us process cannot be served outside the district, and be effective, if objection be made; and the subsequent decisions abundantly support it. *Ex parte Schollenberger*, 96 U. S. 369; *Ober* v. *Gallagher*, 93 U. S. 199; *Galpin* v. *Page*, 18 Wall. 350; *Chaffee* v. *Hayward*, 20 How. 208; *Herndon* v. *Ridgway*, 17 How. 424; *Levy* v. *Fitzpatrick*, 15 Pet. 167; *Russell* v. *Clark*, 7 Cranch, 69, 99; *Parsons* v. *Howard*, 2 Wood, 1; *Pacific R. R.* v. *Missouri Pac. Ry. Co.*, 1 McCrary, 647; S. C. 3 Fed. Rep. 772; *Hyslop* v. *Hoppock*, 5 Ben. 447, 533.

But, if we are to have technical practice in making the objection, it must be done, in a federal court of equity, in the way I have indicated; for that was the uniform method in the English court of chancery at the time our equity rules were adopted. There is no doubt of this, and, as long as equity rule 90 exists, this practice must be followed, if insisted upon, no matter how much the practice has been disregarded by our courts.

Motion granted.